UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) Plaintiff, ) | Case No. 2:05-cr-00108-PMP-PAL |
| vs. ) | **REPORT OF** |
| ) DELVEN RASBERRY, ) | **FINDINGS AND RECOMMENDATION** |
| ) Defendant. ) | (M/Suppress - #15) |

This matter was referred to the undersigned for findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4 on defendant's Motion to Suppress Evidence Seized as a Result of Search by Officers of State of Nevada Parole and Probation (#15) filed December 12, 2005. The government filed a Response and Opposition to Defendant's Motion to Suppress Evidence (#19) January 23, 2006, and defendant filed a Reply (#20) January 25, 2006.

**BACKGROUND**

Defendant is charged by way of an indictment returned March 29, 2005 with conspiracy in violation of 28 U.S.C. § 846 and possession with intent to distribute cocaine base in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A). The indictment arises out of a search of his residence on January 20, 2004 by his Parole and Probation officer, Michael A. Dantonio, and other officers from the Department of Parole and Probation. At the time of the search, Rasberry had been paroled from the Nevada Department of Prisons on a possession of cocaine with intent sell conviction, and was subject to a parole agreement. The parole agreement contained sixteen enumerated conditions, including a search clause which required Rasberry to "submit to a search of your person, automobile, or place of residence, by a Parole Officer, at any time of the day or night without a warrant, upon reasonable cause as ascertained by the Parole Officer." Rasberry was also prohibited from drinking or partaking in

1  alcoholic beverages to excess, and from using, purchasing, or possessing drugs unless prescribed.  On
2  January 11, 2005, Rasberry's urine tested positive for THC, the active ingredient in marijuana.
3  Rasberry signed the form notifying him of the test results denying any recent usage of a controlled
4  substance.  However, his Probation Officer submitted a violation report citing Rasberry for violations of
5  his parole agreement for using a controlled substance and violating laws and conduct in violation of
6  Rules 4 and 8 of his parole agreement.
7       On January 20, 2005, his Probation Officer invoked the search clause to search Rasberry's
8  residence.  The Probation Officer entered the residence after Rasberry's wife answered the door, placed
9  Rasberry in handcuffs, and conducted a search of the residence.  Approximately 21.5 grams of
10 suspected rock cocaine was found in the closet of the master bedroom in the pocket of a white
11 sweatsuit, and approximately $3,800 in cash was found in the pocket of some pants in the closet.  After
12 recovery of these items, Dantonio read Rasberry his *Miranda* rights. Rasberry denied that there were
13 any more drugs in the residence.  However, the Probation Officers continued to search and recovered a
14 black plastic bag found to contain seven smaller bags of suspected rock cocaine, and a digital scale.  As
15 a result of this recovery, Dantonio called for detectives of the LVMPD who arrived at the scene.
16 Rasberry told LVMPD Detective Dockery that he had received seven to nine ounces of crack cocaine
17 from an adult Hispanic male named "George," and owed George $4,500.  Rasberry was booked into the
18 Clark County Detention Center ("CCDC") for parole violation and this federal prosecution ensued.
19      In the current motion, Rasberry seeks to suppress evidence seized in the warrantless search by
20 the Probation Officers, asserting the officers lacked reasonable suspicion to conduct a full-scale search.
21 He also argues that the information the officers relied upon for conducting a search was too stale to
22 support this warrantless search.  Thus, all of the evidence seized as a result of the search of his
23 residence should be suppressed under the "fruit of the poisonous tree" doctrine.  The government
24 opposes the motion, arguing it was not timely filed, the search was supported by reasonable suspicion
25 based on defendant's violation of his parole agreement by using drugs, and the passage of nine days
26 between the test and the search "did not render the reasonable suspicion for the search stale."
27      Rasberry's reply states counsel made an error in calculating the deadline for filing this motion,
28 and suggests that the appropriate remedy is to sanction counsel rather than deny his client a decision on

1  the merits. Though Rasberry's motion was not timely filed, the court will nevertheless consider his
2  argument on the merits since the motion goes to core constitutional issues.

## DISCUSSION

The Fourth Amendment secures "the right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures." U.S. Const. amend. IV. The Fourth Amendment protects reasonable and legitimate expectations of privacy. Katz v. United States, 389 U.S. 347 (1967). The Fourth Amendment protects "people not places." Id. Evidence obtained in violation of the Fourth Amendment, and evidence derived from it may be suppressed as the "fruit of the poisonous tree." Wong Sun v. United States, 371 U.S. 471 (1963).

The United States Court of Appeals for the Ninth Circuit has held that an evidentiary hearing on a motion to suppress need only be held if the moving papers allege facts with sufficient definiteness, clarity, and specificity to enable the court to conclude that contested issues of material fact exist. United States v. Howell, 231 F.3d 615, 620 (9th Cir. 2000), citing, United States v. Walczak, 783 F.2d 852, 857 (9th Cir. 1986); United States v. Harris, 914 F.2d 927, 933 (7th Cir. 1990); United States v. Irwin, 613 F.2d 1182, 1187 (9th Cir. 1980); United States v. Carrion, 463 F.2d 704, 706 (9th Cir. 1972) ("Evidentiary hearings need be held only when the moving papers allege facts with sufficient definiteness, clarity, and specificity to enable the trial court to conclude that relief must be granted if the facts alleged are proved."). "A hearing will not be held on a defendant's pre-trial motion to suppress merely because a defendant wants one. Rather, the defendant must demonstrate that a 'significant disputed factual issue' exists such that a hearing is required." Howell, 231 F.3d at 621, citing, Harris, 914 F.2d at 933. The determination of whether an evidentiary hearing is appropriate rests in the reasoned discretion of the district court. United States v. Santora, 600 F.2d 1317, 1320 (9th Cir.), amended by 609 F.2d 433 (1979).

Rasberry's motion to suppress does not seek an evidentiary hearing, and relies on the attached exhibits as support for the motion. The court concludes there are no contested issues of fact that require an evidentiary hearing in this matter, and the court will therefore decide the motion on the moving and responsive papers.

/ / /

I.    "Special Needs"/Parole Clause Searches

The Supreme Court has recognized that individuals subject to government regulation or supervision have diminished privacy interests because they are under supervision by a probation or parole officer. The rationale for these decisions is that the governmental interest in assuring that one under supervision is genuinely being rehabilitated and that the public is not harmed by his being at large outweighs the individual's expectation to privacy. Because individuals on supervision have a diminished expectation of privacy for Fourth Amendment analysis, special needs searches are examined for reasonableness rather than probable cause. In Griffin v. Wisconsin, the Supreme Court held that Wisconsin's operation of its probation system presented a "special need" for the "exercise of supervision to assure that [probation] restrictions are in fact observed." 483 U.S. 868, 874 (1987). See also New Jersey v. T.L.O., 469 U.S. 325, 351 (1985) (Blackmun, J., concurring in judgement). A probationer's home, like anyone else's, is protected by the Fourth Amendment's requirement that searches be reasonable. Id. at 874. However, both probationers and parolees have diminished privacy interests and liberty rights. Id., 874. See also W. Lafave, Search and Seizure § 10.10 (1987). The operation of a parole system, like a probation system, "presents 'special needs' beyond normal law enforcement that may justify departures from the usual warrant and probable-cause requirements." Griffin, 483 U.S. at 873-74.

The Ninth Circuit has held there is no constitutionally significant distinction between a probationer and a parolee for purposes of the Fourth Amendment. United States v. Davis, F.2d 752, 758 (9th Cir. 1991); United States v. Harper, 928 F.2d 894, 896 n.1 (9th Cir. 1991). Probation and parole, like incarceration, are "a form of criminal sanction imposed by a court upon an offender after verdict, finding, or plea of guilty." Griffin, 483 U.S. at 874, citing, G. Killinger, H. Kerper, & P. Cromwell, Probation and Parole in the Criminal Justice System 14 (1976). Both probationers and parolees do not enjoy "the absolute liberty to which every citizen is entitled, but only . . . conditional liberty properly dependent on observance of special parole restrictions." Morrissey v. Brewer, 408 U.S. 471, 480 (1972), quoted in Griffin, 483 U.S. at 874. "Just as other punishments for criminal convictions curtail an offender's freedoms, a court granting probation may impose reasonable conditions that deprive the offender of some freedoms enjoyed by law-abiding citizens." United States

1  v. Knights, 534 U.S. 112, 119 (2001).

2        The purpose of allowing probation and parole searches without a warrant is "to assure that the
3  probation [or parole] serves as a period of genuine rehabilitation and that the community is not harmed
4  by the probationer's [or parolee's] being at large." Griffin, 483 U.S. at 875.  More intensive
5  supervision can reduce recidivism, and the importance of supervision has grown as probation has
6  become an increasingly common sentence for those convicted of serious crimes. Id.  "Supervision, then
7  is a 'special need' of the [government] permitting a degree of impingement upon privacy that would not
8  be constitutional if applied to the public at large." Id.

9        In Knights, the Supreme Court unanimously concluded that a condition requiring a probationer
10 to submit to a search of his person, property, residence, vehicle or personal effects "at any time" with or
11 without a warrant on reasonable suspicion was a "salient circumstance" in Fourth Amendment analysis
12 of the search conducted in the defendant's apartment. 534 U.S. at 118.  The court reasoned the search
13 was reasonable under its general Fourth Amendment approach to examine the totality of the
14 circumstances, "with the probation search condition being a salient circumstance." Id.  The same
15 principles apply to federal supervised release which is "meted out in addition to, and not in lieu of,
16 incarceration." United States v. Reyes, 283 F.3d 446 (2d Cir. 2002), quoting, United States v. Cardona,
17 903 F.2d 60, 63 (1st Cir. 1990).

18       In Knights, the Supreme Court held that reasonable suspicion is required to conduct a search of
19 a probationer's house. 534 U.S. at 121.  The court found: "The degree of individualized suspicion
20 required of a search is a determination of when there is a sufficiently high probability that criminal
21 conduct is occurring to make the intrusion on the individual's privacy interest reasonable." Id.
22 Although the Fourth Amendment ordinarily requires probable cause, a lesser degree satisfies the
23 constitution when the balance of governmental and private interests makes such a standard reasonable.
24 See, e.g., Terry v. Ohio, 392 U.S. 1 (1968); United States v. Brignoni-Ponce, 422 U.S. 873 (1975).
25 Knights found that the governmental and private interests in stopping probationers from engaging in
26 criminal conduct warrants a less than probable cause standard to conduct warrantless searches of
27 probationers, holding: "When an officer has reasonable suspicion that a probationer subject to a search
28 condition is engaged in criminal activity, there is enough likelihood that criminal conduct is occurring

that an intrusion on the probationer's significantly diminished privacy interests is reasonable." Id. The court further held: "The same circumstances that lead us to conclude that reasonable suspicion is constitutionally sufficient also render a warrant requirement unnecessary." Id., citing, Illinois v. McArthur, 531 U.S. 326, 330 (2001).

The Ninth Circuit defines "reasonable suspicion" as, "specific, articulable facts which, together with objective and reasonable inferences, form the basis for suspecting that the particular person detained is engaged in criminal activity." United States v. Rojas-Millan, 234 F.3d 464, 468-69 (9th Cir. 2000), quoting, United States v. Lopez-Soto, 205 F.3d 1101, 1105 (9th Cir. 2000). A police officer "is entitled to rely on his training and experience in drawing inferences from the facts he observes, but those inferences must also 'be grounded in objective facts and be capable of rational explanation.'" Lopez-Soto, 205 F.3d at 1105, quoting, United States v. Michael R., 90 F.3d 340, 346 (9th Cir. 1996). If an officer does not have reasonable suspicion, and the search therefore violates the Fourth Amendment, "any evidence obtained as a result of the search must be suppressed as fruit of the poisonous tree." United States v. Thomas, 211 F.3d 1186, 1192 (9th Cir. 2000), citing, Wong Sun, 371 U.S. at 484-85.

## II.   Reasonable Cause for the Warrantless Search

Rasberry argues that the existence of a search clause within his parole agreement, coupled with a positive drug test for marijuana nine days prior to the date of the search, does not provide "reasonable suspicion" for the search.

"Reasonable suspicion" is a lesser standard than probable cause, and requires "merely a particularized and objective basis for suspecting criminal activity." U.S. v. Tucker, 305 F.3d 1193, 1200 (9th Cir. 2002) (citing U.S. v. Sokolow, 490 U.S. 1, 7 (1989)). On the other hand, a "parole agreement provides that officers may conduct a *warrantless* search and seizure . . . it does not permit officers to conduct a *suspicionless* arrest and seizure." Moreno v. Baca, 400 F.3d 1152, 1160 (9th Cir. 2005) (emphasis in original). The Ninth Circuit has explained that to determine whether the investigating officers had reasonable suspicion the court considers both the quantity of information possessed by law enforcement and its reliability. Id. (citing Alabama v. White, 496 U.S. 325, 330 (1990)). In Tucker, the court upheld the parole search of the home of a convicted child pornographer

on the basis of information from a named informant who was passing along information from two anonymous tipsters. Id. at 1201. There the court found that the information passed along by the anonymous tipsters, though uncorroborated, contained a sufficiently large quantity of specific information about the parolee's illicit activities to be reliable and thus in turn provided reasonable suspicion for the subsequent search. Id. By contrast, in Moreno, the court found that police officers lacked reasonable suspicion when they stopped Moreno, who was walking on a public sidewalk, because the officers did not know Moreno was a parolee at the time they initiated the stop. 400 F.3d at 1160-61. Ultimately, the court decided "[w]hatever the extent of Moreno's Fourth Amendment rights, they clearly included the right to walk along a public sidewalk unmolested by law enforcement." Id. at 1161.

The court finds that the Probation Officer had reasonable suspicion at the time he searched Rasberry's residence. Although the Probation Officer undertook the search based solely upon the single positive drug test, that single piece of information was significant in light of the crime for which Rasberry had been convicted and paroled. Moreover, the information was extremely reliable given that it was based upon a drug test conducted by the Department of Parole and Probation. In addition, unlike the parolee in Moreno, the Probation Officer was aware that Rasberry was on parole, and was in possession of the positive drug test results before he initiated the search. Therefore, the search of Rasberry's residence was not suspicionless.

**III.  Staleness**

Rasberry additionally argues that even if the positive drug test did provide reasonable suspicion, that information had grown stale during the nine days that elapsed between the time of the test and the time of the search.

The Ninth Circuit has concluded, however, that the "mere lapse of substantial amounts of time is not controlling in a question of staleness." U.S. v. Pitts, 6 F.3d 1366, 1369 (9th Cir. 1993) (quoting U.S. v. Dozier, 844 F.2d 701, 707 (9th Cir.) cert. denied, 488 U.S. 927 (1988)) (internal quotations omitted). Instead, staleness is evaluated "in light of the particular facts of the case and the nature of the criminal activity and property sought." Id. (quoting U.S. v. Greany, 929 F.2d 523, 525 (9th Cir. 1991)) (internal quotations omitted). For example, in Pitts, the court found that a four month-old information

of drug trafficking by a former drug trafficker was not stale. Id.  Likewise, the court found in Greany that two year-old information concerning a marijuana growing operation was not stale. Greany, 929 F.2d at 525.  In each case, the court reasoned that the ongoing nature of drug trafficking made the information that lead to the search not stale, even after many months had elapsed since the information was originally obtained.

Rasberry was released on parole on a felony possession with intent to sell cocaine conviction on October 8, 2004 and tested positive for THC, the active ingredient in marijuana on January 11, 2005. He denied recent usage of a controlled substance when advised he had tested positive.  Nine days later, on January 20, 2005 his probation officer invoked the search clause in his parole agreement, and recovered the evidence Rasberry seeks to suppress.  Given the nature of the offense for which he was on parole, a trafficking offense, and evidence of ongoing drug usage, the nine day interval between the positive test and the search did not render the reasonable suspicion of the search stale.  Under the totality of the circumstances, with Rasberry's parole search condition being a salient circumstance, the search of Rasberry's residence was objectively reasonable and supported by reasonable suspicion. Rasberry does not claim that the incriminating statements he made after the drugs and money were found, and after receiving *Miranda* warnings were involuntary.  Rather, he seeks to suppress them under the "fruit of the poisonous tree" doctrine.

## CONCLUSION

In light of the crime for which Rasberry was convicted and placed on parole, and his positive test for drug usage, the court finds that the Probation Officer had reasonable suspicion to search Rasberry's residence, and that the information upon which the search was made was not stale. Accordingly, no Fourth Amendment violation occurred in the manner in which the narcotics and money were seized from Rasberry's residence.  Because no Fourth Amendment violation occurred, and Rasberry does not claim his *post-Miranda* incriminating statements were involuntary, his statements need not be suppressed under the "fruit of the poisonous tree" doctrine.

For all of the foregoing reasons,

/ / /

/ / /

**IT IS THE RECOMMENDATION** of the undersigned United States Magistrate Judge that defendant Delven Rasberry's Motion to Suppress Evidence Seized as a Result of Search by Officers of State of Nevada Parole and Probation (#15) be DENIED.

Dated this 27th day of March, 2006.

_____
PEGGY A. LEEN
UNITED STATES MAGISTRATE JUDGE